# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 11-CV-5121 (JFB)(ETB)
_____

EASYWEB INNOVATIONS, LLC,

Plaintiff,

VERSUS

FACEBOOK, INC.,

Defendant.

_____

**REDACTED MEMORANDUM AND ORDER**
August 30, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff, EasyWeb Innovations, LLC ("EasyWeb"), commenced this patent infringement action against Facebook, Inc. ("Facebook").

Facebook has now moved to transfer this case to the Northern District of California. For the reasons set forth below, Facebook's motion is denied. In particular, EasyWeb has chosen to file this suit in its home district. Not only is this District the home of EasyWeb and its sole owner and employee, but it is also one of the locations where the operative facts occurred – namely, the conception, reduction to practice, filing, and the assertion of the patents-in-suit. Although the allegedly infringing product was designed, developed, and produced by Facebook in California (and, thus, many of the operative facts took place in California), the plaintiff's choice of forum is still entitled to great deference under these circumstances, and a balancing of the factors does not provide a sufficient basis to disturb the plaintiff's choice of forum in this particular case. Transfer of the case from New York to California will effectively shift the inconvenience from Facebook's witnesses to the plaintiff. Moreover, the relative means of the parties strongly weighs against transfer. Facebook is a large corporation that has failed to demonstrate how flying its witnesses to New York will pose a significant burden on the corporation. In contrast, EasyWeb is a small company that has significant financial issues, and litigating this case in California will place a substantial financial burden on EasyWeb and its sole owner. Such a burden is unwarranted under the circumstances of this case, especially in light of the fact that this is plaintiff's home forum. In short, having fully considered the relevant factors, fairness and convenience do not support disturbing plaintiff's choice-of-forum in this particular case and, thus, the motion to transfer the

case to the Northern District of California is denied.

## I. BACKGROUND

### A. Facts

The following facts are undisputed for the purposes of the motion unless otherwise noted.

John D. Codignotto ("Codignotto") is the sole owner and employee of EasyWeb and alleges that he is the sole inventor of the patents-in-suit. (Declaration of John D. Codignotto, dated June 7, 2012 (the "Codignotto Decl."), at ¶¶ 1, 3-4.) Codignotto resides in Wantagh, New York, and has lived within the Eastern District (the "District") for the majority of his life. (*Id.* at ¶ 2.) Plaintiff asserts that Codignotto operates other businesses, in addition to EasyWeb, and continues to consult within the District for various customers. (*Id.* at ¶ 3.) With respect to this case, Codginotto asserts the following:

> By 1998, I conceived the idea that led to the patents-in suit, which involved ways of sending and publishing messages so that they could easily be seen by a mass audience.

(*Id.* at ¶ 4.) According to plaintiff, he reduced his ideas to practice in Wantagh, but financial resources were not available to enable its commercialization. (Plaintiff's Opposition to Facebook's Motion to Change Venue ("Pl.'s Opp.") at 2.) In 1999, Codignotto filed a provisional patent application, that led to the patents-in-suit, using the same address in Wantagh that EasyWeb now uses. (*Id.*)

Codignotto formed EasyWeb Technologies, Inc. ("EasyWeb Technologies"), in 2007 using the Wantagh, New York, address and assigned all of the patents-in-suit to EasyWeb Technologies. (Codignotto Decl. at ¶ 5.) Two years later, EasyWeb Technologies sued several defendants in this District for infringement of two of the same patents asserted in the instant case. (Pl.'s Opp at 3 n.2 (citing *EasyWeb Techs., Inc. v. Blip Networks, Inc.*, Civ. A. No. 09-2027 (LDW) (ETB) (E.D.N.Y. filed 2009)).) In 2011, Codignotto formed EasyWeb, with EasyWeb Technologies as its sole member, under New York law and using the same address as EasyWeb Technologies. (Codignotto Decl. at ¶ 7.) On May 11, 2011, all rights to the patents-in-suit were assigned by EasyWeb Technologies to EasyWeb. (*Id.*) Codignotto also asserts that "[a]ll of the documents relating to the patents-in-suit are located in or near Nassau County, New York." (*Id.* at ¶ 4.)

Facebook notes that "EasyWeb registered to do business in New York State less than five months before filing this lawsuit, and its principal place of business is a rented mailbox inside a UPS Store." (Facebook's Memorandum in Support of Facebook's Motion to Change Venue ("Def.'s Br.") at 1.) Plaintiff does not dispute that EasyWeb's address is a "rented mailbox inside a UPS Store," but states that Codignotto "[r]uns a small business that cannot afford to have the kind of headquarters and facilities that Facebook [has]" and that the mailing address was chosen because it is conveniently located two miles from Codignotto's residence, which serves as his home office. (Pl.'s Opp. at 3.) Codignotto asserts that "[d]ue to the difficult economic environment in the last several years, [his] businesses . . . have not fared as well as [he] had hoped," ▮▮▮▮▮

(*Id.* at ¶ 13.) Thus, Codignotto states, "I cannot afford the additional time away from my businesses nor the additional expenses involved if this case were transferred to California." (*Id.* at ¶ 14.) Codignotto also notes, with respect to his several businesses, "[a]s the only employee, any of my time away from those businesses would shut down their operations." (*Id.* at ¶ 3.)

Facebook's headquarters and principal place of business is in the Northern District of California. (Def.'s Br. at 1.) Facebook contends that its knowledgeable employees, relevant documents, other sources of proof concerning the design, development and implementation of its allegedly infringing technology, and non-party individuals and companies, are located within the Northern District of California. (*Id.*) Facebook also argues that it has no connection to the Eastern District of New York as it "[h]as no offices or employees in the District, maintains no records in this District, owns no property in this District, and operates no servers in this District." (*Id.* at 2.) As Facebook notes,

> Facebook's deep roots in the Silicon Valley are well known. Except for a few months in a Harvard dormitory in 2004, the vast majority of Facebook's activities and operations have occurred in Palo Alto, California and more recently, at its current headquarters and principal place of business in Menlo Park, California. Both Palo Alto and Menlo Park are located in the Northern District of California.

> Insofar as EasyWeb's Amended Complaint accuses Facebook's website and services, their design development, implementation and operation occurred primarily in either Palo Alto or Menlo Park. The vast majority of Facebook employees with knowledge of these activities are located at Facebook's Menlo Park headquarters. In addition, the evidence that may be relevant to these activities – including technical, financial, marketing, and advertising documents and information – are located in or accessible from its Menlo Park headquarters.

(*Id.* at 2-3 (citations and footnote omitted).)

EasyWeb acknowledges that Facebook does not have offices in this District; however, EasyWeb notes that Facebook has a large office in New York City with at least 100 employees. (Pl.'s Opp. Br. at 4.) EasyWeb also points to the fact that Facebook "[r]eceives a substantial amount of revenue from advertisements that are sold to New York area companies or that target New York residents, including an estimated reach of millions of people within the District by Facebook alone." (*Id.* at 5.) However, at oral argument on July 11, 2012, Facebook explained that, while the New York office has recently advertised for engineers, the engineers that would have knowledge regarding the product and its development are located in California.

### B. Procedural History

Plaintiff commenced this action on October 20, 2011. On December 14, 2011, defendant requested that the Court schedule a pre-motion conference in anticipation of its motion to dismiss. On January 3, 2012, the Court held a pre-motion conference and

set a briefing schedule.  The motion to dismiss was fully briefed as of March 27, 2012.

The parties were scheduled for oral argument on the motion to dismiss for April 5, 2012.  Prior to that date, defendant requested a pre-motion conference in anticipation of filing the pending motion to transfer this case to the Northern District of California.  The Court adjourned the oral argument on the motion to dismiss, without date, pending the outcome of the motion to transfer.

Defendant filed its motion to transfer on May 17, 2012.  Plaintiff filed its opposition on June 8, 2012.  Defendant filed its reply on June 22, 2012.  The parties participated in oral argument on the motion to transfer on July 11, 2012.  The Court has fully considered all of the arguments presented by the parties.

## II. DISCUSSION

### A.  Applicable Law

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) is intended "to prevent waste of 'time, energy and money' and 'to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense.'" *Mastercard Int'l Inc. v. Lexcel Solutions, Inc.*, No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *5 (S.D.N.Y. June 16, 2004) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience

and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *accord Publicker Indus. Inc. v. States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 117 (2d Cir. 1992). In determining whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would "promote the convenience of parties and witnesses and would be in the interests of justice." *Clarendon Nat'l Ins. Co. v. Pascual*, No. 99 Civ. 10840 (JGK)(AJP), 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000) (quoting *Coker v. Bank of America*, 984 F. Supp. 757, 764 (S.D.N.Y. 1997)) (other citations omitted).

The parties do not dispute that this action could have been brought in the Northern District of California.  Instead, the parties focus on whether transfer would promote the interests of justice and the convenience of the parties. The Second Circuit has summarized some of the factors, among others, that a district court is to consider in the exercise of its discretion:

> (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co., Inc.*, 462 F.3d at 106-07 (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)).  Some courts have identified additional factors, including (1) "the forum's familiarity with governing law," and (2)

"trial efficiency and the interest of justice, based on the totality of the circumstances." *Glass v. S & M NuTec*, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006); *accord In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 167-68 (E.D.N.Y. 2006); *see also Dealtime.com v. McNulty*, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000) (collecting cases).

There is no strict formula for the application of these factors, and no single factor is determinative. *See, e.g.*, *Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, No. 04 Civ. 629 (ARR)(ASC), 2004 WL 1812821, at *4 (E.D.N.Y. July 19, 2004); *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). Instead, these factors should be applied and weighed in the context of the individualized circumstances of the particular case. The moving party, Facebook, bears the burden of showing that transfer is warranted in light of these factors. *See O'Hopp v. ContiFinancial Corp.*, 88 F. Supp. 2d 31, 34 (E.D.N.Y. 2000) (citing *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978)).

### B. Analysis

#### 1. Plaintiff's Choice of Forum

It is well settled that the plaintiff's choice of forum is "given great weight." *D.H. Blair & Co., Inc.*, 462 F.3d at 107 (citation omitted). Thus, "[a] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 353 (S.D.N.Y. 1998) (citations omitted). However, courts have noted that the weight given to this factor is diminished where (1) the operative facts have "little or no connection" with the

forum chosen by the plaintiff, *Stein v. Microelectronic Packaging, Inc.*, No. 98 Civ. 8952 (MBM), 1999 WL 540443, at *8 (S.D.N.Y. 1999), *see also Wagner v. N.Y. Marriott Marquis*, 502 F. Supp. 2d 312, 317 (N.D.N.Y. 2007) ("The presumption favoring plaintiff's choice of forum, however, is not so rigidly applied where, as here, the cause of action arose outside of that forum . . ." (citation omitted)); *Royal Ins. Co. of Am.*, 998 F. Supp. at 353 ("The weight accorded to a plaintiff's choice of venue is significantly diminished, however where the operative facts have no connection to the chosen district."); *Hernandez v. Graebel Van Lines, Inc.*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991) ("[W]here the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance."); or (2) where plaintiff's residence is not the chosen forum, *see, e.g.*, *De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F. Supp. 207, 208 (S.D.N.Y. 1989) ("A plaintiff's choice of forum is entitled to substantial weight. But where a plaintiff chooses a forum that is not his residence, that weight is diminished." (internal citations omitted)). Where the selected forum is not connected in a meaningful way to the operative facts and is not the plaintiff's residence, the deference to the chosen forum is significantly diminished.[1] *See, e.g.*, *Eskofot A/S v. E.I. Du*

---

[1] Plaintiff contends that "the rule that a plaintiff's chosen forum receives less deference when the selected judicial district has little connection to the operative facts applies *only* when the chosen forum is *not* the plaintiff's home forum.'" (Pl.'s Br. at 7-8 (citing *Plevesky v. Suntrust Bank*, 10-CV-2290 (JS)(ETB), 2010 WL 4879006, at *5 (E.D.N.Y. Nov. 22, 2010) (emphasis in original)).) However, the Court disagrees. If there is little or no connection of the operative facts to the chosen forum but it is the plaintiff's home district, the plaintiff's choice of forum is entitled to *less* deference even though it still

*Pont De Nemours & Co.*, 872 F. Supp. 81, 96 (S.D.N.Y. 1995) ("The deference accorded to plaintiff's choice of forum . . . is diminished substantially where the forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred."); *Thomas Am. Corp. v. Fitzgerald*, No. 94 Civ. 0262 (CBM), 1994 WL 440935, at *5 (S.D.N.Y. Aug. 11, 1994) ("[T]he plaintiff's choice of forum is accorded less weight where the plaintiff's chosen forum is neither plaintiff's home nor the place where the operative facts of the action occurred."). Moreover, "[w]here it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight whatever, and the transfer of venue is appropriate." *Pierce v. Coughlin*, 806 F. Supp. 426, 429 (S.D.N.Y. 1992) (internal quotation marks and citation omitted).

In the instant case, EasyWeb is owned by one individual, Codignotto, who has resided within the District for the majority of his life and currently lives in Wantaugh, New York. Although EasyWeb's business address is a post office box inside of a UPS Store, defendant has pointed to no authority to support the position that simply because plaintiff's business address is a post office box that his choice of forum automatically should be granted less weight. In other words, in this case, it is clear from the record that the use of the post office box is not an indication of an attempt at forum shopping because it is clear that the home district for EasyWeb and its owner is this District. Instead, the post office box is

simply an indication of the small size of EasyWeb and its limited financial resources. Thus, notwithstanding the use of the post office box, plaintiff's choice of forum here is entitled to deference as the plaintiff's home district.

Facebook also argues that plaintiff's choice of forum should not be given great weight because the operative facts have no connection to the District. (Def.'s Br. at 11-12.) Plaintiff counters that the allegedly infringed upon technology was created within this District. As EasyWeb states,

> ***All*** of the facts surrounding the conception, reduction to practice, filing, and assertion of the patents-in-suit occurred in and around this District. ***All*** of the facts surrounding the operation of EasyWeb occurred in this District. And ***all*** of the essential testimony and documents regarding those facts also are located in or near the District.

(Pl.'s Opp. Br. at 4 (emphasis in original).) However, Facebook contends that, in patent infringement cases, the locus of operative facts is only where the allegedly infringing product was designed, developed, and produced – not where the patent-in-suits were developed. (Def.'s Br. at 9.) As will be discussed in more detail *infra*, the Court disagrees with Facebook and concludes that the place where the patented invention was developed and the place where the allegedly infringing products are developed are both loci of operative facts. *See, e.g.*, *Devenshield Inc. v. First Choice Armor & Equip., Inc.*, No. 5:10-CV-1140 (GTS/DEP), 2012 WL 1069088, at *13 (N.D.N.Y. Mar. 29, 2012) ("venue analysis may demonstrate that there [are] multiple loci of operative facts") (collecting cases). Thus, in this case, the operative facts do have a clear connection to

---

carries some deference as the home district. Of course, where the chosen forum is not the plaintiff's home district *and* has little or no connection to the operative facts, then the deference is significantly diminished.

the District as the place where the patents-in-suit were designed, developed, and patented. Although operative facts also occurred in California, EasyWeb's choice of forum it is still entitled to great deference in this case as the plaintiff's home district and as one of the loci of the operative facts.

### 2. Convenience of Witnesses

In deciding whether to disturb the plaintiff's choice of forum, the convenience of the witnesses is generally the most important factor in the transfer analysis. *See, e.g.*, *DLJ Mortgage Capital, Inc. v. Cameron Fin. Group, Inc.*, No. 07 Civ. 3746 (LAP), 2007 WL 4325893, at *5 (S.D.N.Y. Dec. 4, 2007) ("[T]he convenience of witnesses is typically the most important factor in a motion pursuant to § 1404(a)."); *accord Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in the transfer analysis."); *Wagner*, 502 F. Supp. 2d at 315 ("[T]he convenience of both party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." (internal quotation marks and citation omitted)); *see also Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." (citations omitted)).

Generally, the moving party submits an affidavit explaining why the transferee forum is more convenient, which includes "the potential principal witnesses expected to be called and the substance of their testimony." *Pall Corp. v. PTI Techs., Inc.*, 992 F. Supp. 196, 198 (E.D.N.Y. 1998) (quoting *Laumann Mfg. Corp. v. Castings USA Inc.*, 913 F. Supp. 712, 720 (E.D.N.Y. 1996)). As discussed below, at this stage of the litigation, it is unclear whether Facebook's witnesses would be more inconvenienced by a trial in this District, or whether plaintiff would be more inconvenienced if this case was transferred to the Northern District of California. Accordingly, this factor is neutral.

Facebook has submitted the declaration of Kelly Simpson ("Simpson"), an Intellectual Property Paralegal employed by Facebook. In Simpson's Declaration, Simpson states that, "[t]he vast majority of Facebook employees knowledgeable about the design, development and operation of the www.facebook.com website are located at Facebook's Menlo Park headquarters." (Declaration of Kelly Simpson, dated May 16, 2012 (the "Simpson Decl."), at ¶ 5.) Moreover, Simpson declares that,

> Facebook has no offices, property, or servers located in the Eastern District of New York, and none of its employees work in the Eastern District of New York. Facebook does not store any of its documents or records in the Eastern District of New York. None of the development or management of Facebook's technology for its website and services occurs in the Eastern District of New York.

(*Id.* at ¶ 7.) Thus, Simpson alleges that none of Facebook's potential witnesses are located in the Eastern District of New York. Moreover, Vidya Bhakar ("Bhakar"), an attorney with Cooley LLP, attorneys for defendant, submitted a declaration that

alleges that over 40 individuals and entities[2] are "[b]elieved to be located in the Northern District of California [and] have been identified as authors, inventors, owners, or custodians of prior art potentially relevant to this case." (Declaration of Vidya Bhakar, dated May 17, 2012 ("Bhaker Decl."), at ¶ 2.) However, while these individuals and entities have been identified as sources of potentially material information, Facebook has not provided an actual witness list or

---

[2] Bhakar's Declaration lists the following individuals and entities:

Jack Hong (Palo Alto, CA), George Toye (Foster City, CA), Stanford University (Stanford, CA), Toshio Kanoh (Mountain View, CA), Gregory J. Wolff (Mountain View, CA), Ricoh Corporation (Menlo Park, CA), Jonathan J. Hull (Cupertino, CA), Mark Peairs (Menlo Park, CA), John Cullen (Redwood City, CA), Michael Baxter (Sunnyvale, CA), Shanuanu Narayen (Sunnyvale, CA), Wu Wong (Los Altos, CA), Steve Morris (Palo Alto, CA), Chan Chiu (Sunnyvale, CA), Cecilia Zhao (Newark, CA), Aditya Khosla (Mountain View, CA), James Lei (Cupertino, CA), Annette M. Adler (Palo Alto, CA), Kenneth P. Fishkin (Redwood City, CA), Matthew E. Howard (San Francisco, CA), Randy Shoup (San Francisco, CA), Mark N. Hayne (San Jose, CA). Todd A. Cass (San Francisco, CA), Catherine C. Marshall (Mountain View, CA), Alexander E. Silverman (Menlo Park, CA), Philippe Tarbouriech (San Franscisco, CA), Kurt Piersol (Santa Cruz, CA), Mohammad A. Safai (Los Altos, CA), Agilente Technologies (Palo Alto, CA), Peter F. King (Half Moon Bay, CA) StephenStephen S. Boyle (Fremont, CA), Lawrence M. Stein (San Carlos, CA), Alain S. Rossmann (Palo Alto, CA), Bruce V. Schwarts (San Mateo, CA), Mark G, Lentczner (Mountain View, CA), Openwave Systems, Inc. (Redwood City, CA), Intel Corporation (Santa Clara, CA), Xiaoan Hou (Santa Clara, CA), Yahya Hamadani (Sunnyvale, CA), Matthew A. Markus (San Francisco, CA), LSI Corporation (Milpitas, CA), and Chris Cheah (San Jose, CA).

(Bhakar Decl. at ¶ 2.)

indicated approximately how many witnesses they intend to call. In fact, Facebook argues that they are not required to submit a witness list when making a motion to transfer because the convenience of witnesses is not their only reason for transfer. (Defendant's Reply Brief in Support of Its Motion to Transfer Venue ("Def.'s Reply. Br.") at 5.) Moreover, Facebook points to the fact that the Amended Complaint is vague with respect to the accused products, and thus, Facebook should not be faulted for failing to identify specific witnesses and testimony. (*Id.*) Accordingly, Facebook generally argues that, since it is undisputed that www.facebook.com was developed in the Northern District of California, "specifying individuals by name is clearly unnecessary. Instead the vast majority, if not all, of Facebook's key witnesses and evidence will be found there." (*Id.*)

On the other hand, just as it is clear that the majority of Facebook witnesses would be located in the Northern District of California, the majority, if not all of plaintiff's witnesses will clearly be located within this District. As discussed *supra*, EasyWeb has one employee, Codignotto, who resides within this District and it would be inconvenient for him to travel to the Northern District of California. It is not clear at this juncture if plaintiff intends to call any additional witnesses from this District.

While Facebook may ultimately have more witnesses than plaintiff that need to travel to this District, at this stage of the litigation, it is unclear how many witnesses they intend to call, or the materiality of their testimony. *See, e.g.*, *Aloft Media, LLC v. Adobe Sys. Inc.*, Civil Action No. 6:07-cv-355, 2008 WL 819956, at *5 (E.D. Tex. Mar. 25, 2008) (concluding that cost of attendance of willing witnesses was neutral

8

where movant "has not shown that [the 47 identified prior art witnesses located near transferee forum] are likely to testify at trial" even "[t]hough it may be more convenient for [them] to testify [there]"); *see also Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 208-09 (S.D.N.Y. 1998) ("Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a)."). In addition, while plaintiff has indicated that Codignotto will be a witness, it is entirely possible that plaintiff will call additional witnesses that will be inconvenienced if this case is transferred. Thus, at this point, the Court finds that this factor is neutral as it relates to the transfer analysis.

However, even assuming *arguendo* that Facebook will have to call a number of California residents as witnesses and that this factor favors transfer, the Court concludes that the other factors – especially, the fact that this is plaintiff's home district and the relative means of the parties (including plaintiff's precarious financial condition) – still outweigh this factor for the reasons discussed in this Memorandum and Order.

### 3.  Location of Documents

With respect to the location of documents, Facebook argues that "[r]elevant documentation and evidence about Facebook's activities and operations concerning its website and services can also be found at its Menlo Park headquarters including evidence (such as financial marketing, and advertising documents and information) that may potentially relate to EasyWeb's damages and willfulness allegations." (Def.'s Br. at 10.) Moreover,

Facebook argues that the location of EasyWeb's documents is irrelevant because "[i]t is the location of the development and production of the allegedly infringing product, as well as the documents related to such product, that is the relevant factor." (*Id.* (citing *Ratner v. Martel Electronics Corporation*, 07-CV-4742 (JS)(ARL), at *15, Sept. 30, 2008, ECF No. 52.) However, the Court does not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production. *See, e.g.*, *Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."); *DiStefano v. Carozzi N. Am., Inc.*, No. 98 Civ. 7137 (SJ), 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 16, 2002) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, modern photocopying technology deprives this issue of practical or legal weight." (citations omitted)).

### 4.  Convenience of the Parties

In terms of the convenience of the parties, the Court recognizes that "'[w]here transfer would merely shift the inconvenience from one party to the other,' the Court should leave plaintiff's choice of venue undisturbed." *See Wagner*, 502 F. Supp. 2d at 316 (quoting *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 182 (W.D.N.Y. 1997)); *accord Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F. Supp. 1314, 1322 (S.D.N.Y. 1989). However, "transfer of venue may be appropriate where inconvenience for the party moving for

transfer could be completely eliminated without substantially adding to the non-moving party's inconvenience." *Frame v. Whole Foods Mkt., Inc.*, No. 06 Civ 7058 (DAB), 2007 WL 2815613, at *6 (S.D.N.Y. Sept. 24, 2007).

Here, transferring venue to the Northern District of California will simply shift the inconvenience from plaintiff to defendant. As explained *supra*, EasyWeb's location, and its sole employee, Codignotto, is in the District. According to Facebook's representations that the majority of their employees with any material knowledge are located in the Northern District of California, it is entirely possible that transfer would completely eliminate any inconvenience to defendant. However, transferring to the Northern District of California will substantially add to plaintiff's inconvenience and place an enormous financial burden on plaintiff in litigating this case. Thus, this factor weighs against transfer of this action to the Northern District of California.

5.  Locus of Operative Facts

The parties dispute whether the locus of operative facts is the location where the allegedly infringing technology was created (*i.e.*, the Northern District of California), or where the initial technology was created and where the patents-in-suit were developed (*i.e.*, the Eastern District of New York).

Facebook argues that "[i]n patent infringement cases, the locus of operative facts usually lies where the allegedly infringing product was designed, developed, and produced" (Def.'s Br. at 9 (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006).) In support of this position, defendant relies heavily on an unreported decision, *Ratner v.*

*Martel Electronics Corporation*, in which Judge Seybert ruled that in a patent infringement case the locus of operative facts was in the District of New Hampshire "[b]ecause the alleged infringing product was designed, developed, and produced by [the defendant] in New Hampshire." (Memorandum and Order, 07-CV-4742 (JS)(ARL), at *14, Sept. 30, 2008, ECF No. 52.) Moreover, Judge Seybert held that "[p]laintiff's contention that his documents and records are located in New York is irrelevant; it is the location of the development and production of the allegedly infringing product, as well as the documents related to such product, that is relevant to this factor." *Id.* at *15 (citing *Fuji Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 374 (S.D.N.Y. 2006)).

However, several districts courts within this Circuit have had a more expansive view of the locus of operative facts in patent cases. As plaintiff notes in its opposition, in *Children's Network, LLC v. PixFusion LLC*, the court held that "[i]n patent cases, the locus of operative facts *usually* lies where either the patent-in-suit *or* the allegedly infringing product was designed, developed, and produced." 722 F. Supp. 2d 404, 413 (S.D.N.Y. 2010) (emphasis added) ("because both the validity of, and [defendant's] alleged infringement of, the patents-in-suit are at issue here, the loci of operative facts are New York, Philadelphia, and potentially Ireland."). Other courts have reached a similar conclusion. *See, e.g.*, *Devenshield Inc. v. First Choice Armor & Equipment, Inc.*, No. 5:10-CV-1140 (GTS/DEP), 2012 WL 1069088, at *13 (N.D.N.Y. Mar. 29, 2012) ("Operative facts in a patent infringement action include those relating to the design, development, and production of a patented product.") (collecting cases); *Fuji Photo Film*, 415 F. Supp. 2d at 375 ("Operative facts in a patent

infringement action include facts relating to the design, development, and production of a patented product." (internal quotation marks omitted)); *accord Medien Patent Verwaltung AG v. Warner Bros. Entertainment, Inc.*, 749 F. Supp. 2d 188, 191-92 (S.D.N.Y. 2010); *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 175 (S.D.N.Y. 2009); *see also A&A Jewellers Ltd. v. Commemorative Brands, Inc.*, No. 03-CV-6151E(F), 2004 WL 912929, at *1 n.14 (W.D.N.Y. Mar. 30, 2004). In fact, in a recent decision by Judge Seybert denying a motion to transfer in a patent suit, Judge Seybert did not construe the factor regarding the locus of operative facts as narrowly as Facebook suggests from the *Ratner* decision and, instead, adopts the *Children's Network* position. *See Audiovox Corp. v. South China Enterprise, Inc.*, No. No. 11-CV-5142 (JS)(GRB), 2012 WL 3061518, at *8 (E.D.N.Y. July 26, 2012) ("'[i]n patent cases, the locus of operative facts usually lies where either the patent-in-suit or the allegedly infringing product was designed, developed, and produced,' *Children's Network*, 722 F. Supp. 2d at 413, and, here, the Patents-In-Suit were developed by inventors in New York and the allegedly infringing products were produced in Hong Kong.").

This Court agrees with *Children's Network* framework and concludes that, in patent cases, the locus of operative facts can include the district where either the patent-in-suit *or* the allegedly infringing product was designed, developed, and produced.[3] Here, because both districts in this case are loci of operative facts, this factor is neutral

in this case.[4] *See, e.g.*, *Defenshield Inc. v. First Choice Armor & Equip., Inc.*, No. 5:10-CV-1140 (GTS/DEP), 2012 WL 1069088, at *13 (N.D.N.Y. Mar. 29, 2012) ("Because Plaintiff's patented product is designed, developed, and manufactured in transferor forum, and Defendants' allegedly infringing product is designed, developed, and manufactured in the proposed transferee's forum, the Court finds that [the] location of none of the events is determinative."); *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 697 (S.D.N.Y. 2009) ("Because both districts are loci of operative facts, this factor is neutral in the analysis."). However, even if this Court found that the locus of operative facts was in the Northern District of California, based on the other factors considered, and in particular plaintiff's choice of forum and the relative means of the parties, the Court would still deny defendant's motion to transfer based upon a balancing of all the factors.

6. Availability of Process to Compel the Attendance of Unwilling Witnesses

Rules 45(b)(2) and 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure prohibit a subpoena from directing a witness to travel more than 100 miles. Fed. R. Civ. P. 45. There is no indication that any non-party witnesses would refuse to appear and, thus, this factor is neutral. Although Facebook notes that potential witnesses would be outside of the District's ability to be subpoenaed, they have not indicated that such witnesses would be unwilling to appear.

---

[3] To the extent that operative facts exist in more than one district but the more important operative facts may lie in one particular district given the center of the dispute, that reality will usually be measured and properly weighed in one or more of the other transfer factors, including the convenience of the witnesses and parties, as well as the location of the documents.

[4] The Court notes that, in patent cases, another relevant consideration for this factor may be the area where the allegedly infringing product was sold or offered. *See, e.g., Defenshield Inc. v. First Choice Armor & Equip., Inc.*, No. 5:10-CV-1140 (GTS/DEP), 2012 WL 1069088, at *13 (N.D.N.Y. Mar. 29, 2012) (discussing sales issue).

### 7. Relative Means of the Parties

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994); *see also Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693-94 (S.D.N.Y. 1994) (denying transfer where "[p]laintiffs are individuals who are suing a large corporation which possesses considerably greater financial assets.)

Although EasyWeb is a corporation, there is no dispute that it is a small corporation that is solely owned by Codignotto. Moreover, as discussed *supra*, Codignotto, as well as his businesses, have suffered financially, and as a result, are in substantial debt. Thus, EasyWeb argues that it cannot afford the expense of litigating in California. This Court agrees that the relative means of the parties, including the precarious financial situation of plaintiff, strongly favors denial of defendant's motion to transfer.

Facebook attempts to argue that the means of the parties is a neutral factor. However, that is clearly not the case. In contrast to EasyWeb, Facebook is a large corporation. Facebook attempts to point to the fact that EasyWeb has only provided the financial status of Codignotto, rather than EasyWeb, and thus has not met its burden. As Facebook argues "Mr. Codignotto's declaration is exceedingly ambiguous as to whether EasyWeb has or is receiving outside financing for this litigation. He merely claims that EasyWeb Technologies, Inc., a holding company for EasyWeb, has limited money in its bank account and that his other unrelated business expenses have not been successful." (Def.'s Reply at 7.)

However, Codignotto has explained in his declaration that EasyWeb has never received any revenue, and thus does not have a bank account. (Codignotto Decl. at ¶ 9.) Moreover, plaintiff has attached EasyWeb Technologies' most recent bank statement, showing a balance of $1,127.75. (*Id*. at ¶ 10.) Although Facebook is correct that the plaintiff in this case is EasyWeb, and not EasyWeb Technologies, as discussed *supra*, EasyWeb was only formed in 2011 with EasyWeb Technologies as its sole member. (*Id*. at ¶ 7.) Thus, EasyWeb Technologies' financial status is relevant to this analysis. In addition, although Facebook argues that Codignotto's personal financial situation is not relevant, the Court disagrees. Facebook does not dispute that EasyWeb's sole owner and employee is Codignotto. Accordingly, the Court finds that the financial information provided by plaintiff is sufficient to demonstrate that litigating this case in the Northern District of California would be financially burdensome to plaintiff, and that the relative means of the parties heavily favors a denial of transfer.

Additionally, Facebook does not dispute that it is a large corporation and that EasyWeb is a small corporation that is solely owned by Codgnotto. While Facebook has argued that it would be *inconvenient* for it to litigate this case in New York, it has not suggested, unlike EasyWeb, that it would be a financial hardship to litigate this case in New York. Thus, this factor strongly favors denial of the transfer motion.

8. Familiarity with the Governing Law

With respect to the forum's familiarity with the governing law, the Court finds that this factor is neutral. This District and the Northern District of California are equally familiar with, and capable of applying, the legal principles necessary to adjudicate plaintiff's federal patent claims. *See Farrior v. George Weston Bakeries Distrib., Inc.*, No. 08-CV-2705 (JFB)(WDW), 2009 WL 113774, at *8 n. 6 (E.D.N.Y. Jan. 15, 2009). (noting that either federal district court in question had necessary expertise to evaluate federal FLSA claim); *Earley v. BJ's Wholesale Club, Inc.*, No. 06 Civ. 3529 (WHP), 2007 WL 1624757, at *3 (S.D.N.Y. June 4, 2007) ("[A]ny district would be presumed to have expertise in adjudicating Plaintiff's FLSA claims."); *Neil Brothers Ltd.*, 425 F. Supp. 2d at 333 ("Where, as here, the law to be applied is federal patent law, the factor is neutral.").

9. Remaining Factors

With respect to the relative docket conditions of the two districts in question, the Court does not view this factor as significant in this case. The Court is fully capable of adjudicating plaintiff's claims in a timely manner, and there is no indication that the situation in the Northern District of California would be any different.

Similarly, the Court does not find any basis to conclude that "the interests of justice" factor – a separate component of the § 1404(a) analysis – weighs in favor of transfer. Instead, the Court finds that such interests support transfer under the totality of circumstances outlined herein.

In sum, after carefully considering the parties' submissions and the applicable law, the Court concludes in its discretion that the defendant has not met its burden by demonstrating that the above-referenced factors, as well as the totality of the circumstances and the interests of justice, warrant transfer of this action to the Northern District of California.

IV. CONCLUSION

For the reasons set forth herein, defendant's motion to change venue, pursuant to Section 1404(a), is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 30, 2012
Central Islip, NY

\* \* \*

Plaintiff is represented by Alan S. Kellman, Esq., John Michael Desmarais, Esq., and Xiao Li, Esq., of Demarais LLP, 230 Park Avenue, New York, New York 10169. Defendant is represented by Heidi L. Keefe, Esq., Jonathan P. Bach, Esq., and Vidya Bhakar, Esq., of Cooley LLP, Five Palo Alto Square, 3000 El Camino Real, Palo Alto, CA 94306 and 1114 Avenue of the Americas, New York, New York 10036.